IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| Robert Sutton, *On behalf of himself and those similarly situated*, Plaintiff, v. Diversity at Work Group, Inc. d/b/a United Courier, *et al.*, Defendants. | Case No. 1:20-cv-682 Judge Douglas R. Cole Chief Magistrate Judge Karen L. Litkovitz |

PLAINTIFF'S UNOPPOSED MOTION FOR FLSA SETTLEMENT APPROVAL

Plaintiff Robert Sutton asks the Court to approve the settlement between himself and the Opt-in Plaintiffs (collectively the "FLSA Collective") and Defendants Diversity at Work Group, Inc. d/b/a United Courier, Lynn Meyers, Jim Meyers, Scott Laminack (collectively, "Defendants"). The Settlement Agreement is attached as Exhibit 1. Defendants do not oppose this motion. The arguments in support of Plaintiff's Motion are more fully set forth in the attached memorandum.

Plaintiff asks that the Court to issue an Order: (1) approving the proposed settlement; (2) approving to the service award for the Plaintiff; (3) approving to Collective Counsel's request for attorneys' fees and costs; (4) approving the deduction of reasonable settlement administration costs, (5) dismissing the Rule 23 class allegations without prejudice; (6) dismissing the state and

i

federal law claims of the FLSA Collective with prejudice; and (7) retaining jurisdiction over this settlement to ensure that it is carried out.

                                                  Respectfully submitted,

/s/ *Riley Kane*
Andrew R. Biller (Ohio Bar No. 0081452)
Andrew P. Kimble (Ohio Bar No. 0093172)
Riley E. Kane (Ohio Bar No. 0100141)
BILLER & KIMBLE, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*rkane@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiff and the FLSA Collective*

———————————————————————————————————

MEMORANDUM IN SUPPORT OF
PLAINTIFF'S UNOPPOSED MOTION FOR FLSA SETTLEMENT APPROVAL

———————————————————————————————————

1. **Introduction**

The Parties have reached a Settlement Agreement (attached as Exhibit 1)[1] to resolve this lawsuit for Plaintiff Robert Sutton and the Opt-in Plaintiffs in this action (the "FLSA Collective"). Plaintiff now seeks the Court's approval of this wage and hour settlement because it is fair, adequate, and reasonable.

2. **Background of this Lawsuit**

On June 9, 2020, Plaintiff Robert Sutton filed this wage and hour class and collective action on behalf of the all of delivery drivers at Diversity at Work Group, Inc. d/b/a United Courier. *See* Doc. 1. Plaintiff alleges that all of United Courier's independent contractor delivery drivers are misclassified as independent contractors because, in reality, they function as Defendants' employees. *See id.* Defendants deny these allegations and contend that the delivery drivers were and continue to be properly classified as independent contractors.

On December 15, 2020, the Court granted Plaintiff's Motion for FLSA Conditional Certification. *See* Docs. 3, 31. Collective action notice was distributed, ultimately resulting in a 20-member FLSA Collective.

On April 1, 2021, Defendants filed a Motion for Judgment on the Pleadings challenging Plaintiff's unjust enrichment claim. Docs. 44. That issue was fully briefed, but was not decided. *See id.*; Docs. 47, 49, 51, 53).

---

[1] The attached copy is unexecuted, the Parties will file signed copies upon execution.

1

During May 2022, the Parties briefed disputes regarding the scope of Opt-in Plaintiff discovery. *See* Docs. 48, 50, 53.

On September 3, 2021, Plaintiff filed a Motion for Summary Judgment on the legal standard for vehicle expense reimbursement. Doc. 57. Again, the issue was fully briefed, but was not decided by the Court. *See id.*; Docs. 58, 60.

In November and December 2021, the Parties were poised to engage in additional discovery disputes, but instead reached an agreement to stay the case for settlement negotiations. *See* Notation Order of November 8, 2021; Doc. 66.

Throughout 2022, the Parties engaged in detailed bilateral settlement negotiations, conducting detailed audits of the available data and exchanging and disputing damages models.

On September 7, 2022, the Parties attended mediation that led to the settlement now presented to the Court.

3. **Summary of Settlement Terms**

The settlement agreement provides that Defendants will pay $200,000 to create a Settlement Fund to resolve Plaintiff and the FLSA Collective's claims. The Settlement Fund will be divided first by subtracting any amounts awarded for attorneys' fees, advanced litigation expenses, reasonable administration expenses, and the service award, the remaining amount will be the Net Settlement Fund. Ex. 1 at ¶ 3.C.i.

The Net Settlement Fund will then be divided into two subfunds: a Wage Claims Subfund, which will account for 87.5% of the Net Settlement Fund, and an Unjust Enrichment Subfund, which will account for 12.5% of the Net Settlement Fund. *Id.* at ¶ 3.D.ii. The subfunds are divided

in this way to account for the 6-year statute of limitations for the unjust enrichment claim and the potential 3-year statute of limitations for the wage claims. *Id.* at ¶ 3.D.ii.a.

Within each subfund, each FLSA Collective member will receive a pro-rated share based on the amount they were paid t by Defendants between June 9, 2014 to September 7, 2022 (the "Collective Period"). *Id.* at ¶ 1.C. This method was chosen because records of actual miles driven and hours worked did not exist and because higher delivery payments, generally corresponded with higher-mileage deliveries.

In exchange for these amounts, the FLSA Collective will release all wage and hour and unjust enrichment claims relating to the facts asserted in this lawsuit, as detailed in the Settlement Agreement. *Id.* at ¶ 5.A–B. Additionally, Named Plaintiff Robert Sutton will fully release and discharge Defendants and other Released Parties, as defined within the settlement agreement, from any and all claims that Plaintiffs hold up to and though the date that Plaintiffs execute the settlement agreement. *Id.* at ¶ 5.C.

4. **Standard for Settlement Approval**

When current or former employees bring a private action alleging FLSA violations and the parties settle the matter, the settlement must be approved by the federal district court, which may enter a stipulated judgment after scrutinizing the parties' settlement terms for fairness. *Waters v. Pizza to You, LLC*, No. 3:19-cv-372, 2022 WL 3048376, 2022 U.S. Dist. LEXIS 139084, at *4–7 (S.D. Ohio Aug. 1, 2022) (citing cases, including *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982)).[2]

---

[2] Alternatively, an FLSA settlement can be valid if supervised by the Secretary of Labor, but those circumstances are not present here. *See, e.g.*, *Lopez v. Silfex, Inc.*, No. 3:21-cv-61, 2021 WL 57952, 2021 U.S. Dist. LEXIS 232508, at *7–10 (S.D. Ohio Dec. 3, 2021) (further explaining the standard, collecting cases).

3

In evaluating a settlement of FLSA claims the Court's role "is comparable to that of a court in a settlement of a class action…" *Kritzer v. Safelite Sols., LLC*, 2012 WL 1945144, 2012 U.S. Dist. LEXIS 74994, at *5 (S.D. Ohio May 30, 2012). The Court must ensure that the settlement is (1) the product of a bona fide dispute, (2) fair, reasonable, and adequate, and (3) reached through arms-length negotiation. *Id.* at *16–27. As described below, the proposed settlement meets this standard.

Courts in the Sixth Circuit additionally consider and balance six factors when deciding whether to approve a settlement. Those factors include (1) the complexity, expense, and likely duration of the litigation; (2) the stage of the proceedings and amount of discovery completed; (3) the judgment of experienced trial counsel; (4) the nature of the negotiations; (5) any objections from class members; and (6) the public interest. *Doe v. Déjà Vu Consulting, Inc.*, 925 F.3d 886, 894–85 (6th Cir. 2019); *see also Kritzer*, 2012 WL 1945144, 2012 U.S. Dist. LEXIS 74994, at *20 (assessing the factors).

**5. The Court should approve the Parties' Settlement Agreement.**

    **5.1. The settlement is the product of a bona fide dispute.**

The most important factor to consider when evaluating a proposed settlement is Plaintiffs' probability of success on the merits. *Kritzer*, 2012 WL 1945144, 2012 U.S. Dist. LEXIS 74994, at *20 (citing *In re General Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984)). As shown through the pleadings, there were numerous contested issues of law and fact that rendered the outcome of the FLSA Collective's claims uncertain. There were many uncertain legal and factual questions such as: (1) whether the delivery drivers were independent contractors or employees, (2) the legal standard for employee vehicle expense reimbursement, (3) the exact

4

number of miles driven by the delivery drivers, (4) the exact number of hours that drivers worked per workweek, (5) whether the individual Defendants are or are not employers, (6) whether or not Defendants' actions were "willful," (7) whether the FLSA Collective were entitled to liquidated damages, (8) whether liquidated damages will "stack," or not, (9) the extent of damages for Plaintiffs' O.R.C. § 4113.15 and O.R.C. § 2307.60 claims, (10) the extent of damages for Plaintiffs' unjust enrichment claim. As a result, the FLSA Collective's possible recovery ranges from $0 to over a million dollars, depending on the extent to which Plaintiff prevailed on various claims. As such, there was a bona fide dispute regarding both the existence and amount of unpaid wages or other damages owed to Plaintiffs.

### 5.2. The settlement is fair, reasonable, and adequate.

"[S]ociety has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters." *Gentrup v. Renovo Servs., LLC*, No. 1:07-cv-430, 2011 WL 2532922, 2011 U.S. Dist. LEXIS 67887, at *14 (S.D. Ohio, June 24, 2011). Given the complexity of the legal and factual questions before the Court in this case, the considerable time and expense required to litigate those questions, and the uncertainty of success, the settlement is fair, adequate, and reasonable. Continued litigation would have required substantial discovery, expense, and, potentially, expert testimony. The Parties decided to attempt settlement negotiations largely because of these potential costs. The settlement provides a benefit to the FLSA collective and Defendants by avoiding the time, expense, and uncertainty of moving forward with litigation.

### 5.3. The nature of negotiations.

The Parties reached the above settlement after Defendants provided detailed records to Plaintiffs, the Parties exchanged formal demand and counter-offer letters detailing their respective calculation of damages and supporting legal arguments, and engaged in approximately two months of back-and-forth, arm's length negotiations. The process began during initial discovery when Defendants provided payment records and delivery data. Collective Counsel conducted an audit of the data produced to create a damages model. Defendants then conducted their own detailed audit. The Parties exchanged, disputed and modified their calculations between January and May 2022, at which point they agreed to attend mediation. This was a significant point of contention because certain important data (such as actual miles driven and actual hours worked) was never recorded. On September 7, 2022, the parties attended private mediation with Robert "Buzz" Trafford. During that mediation the Parties reached an agreement in principle and subsequently negotiated the Settlement Agreement presented with this Motion. This process shows that the settlement was reached through a non-collusive, arms-length process and allowed the Parties to achieve a fair settlement agreement.

## 6. Additional Fairness Considerations

**Complexity, expense and likely duration.** Under-reimbursement class and collective actions are inherently complex. *See, e.g., Arledge v. Domino's Pizza, Inc.*, 2018 WL 5023950, 2018 U.S. Dist. LEXIS 179474, at *5 (S.D. Ohio Oct. 17, 2018). This was made all the more complicated by the disputed drivers' disputed independent contractor status, which is a "highly complicated" that "turn[s] on a multitude of facts" and "present[s] complicated legal questions" that would require "additional discovery, extensive pretrial motions addressing complex factual and legal

6

questions, and ultimately a complicated, lengthy trial." *Badia v. HomeDeliveryLink, Inc.*, No. 2:12-6920, 2015 WL 5666077, 2015 U.S. Dist. LEXIS 129033, at *14 (D.N.J. Sep. 25, 2015). Additionally, a normal delivery driver under-reimbursement case is especially complex and time consuming because of the disputed legal standard that turns on regulations, *Auer/Kisor* deference issues, Department of Labor guidance and case law, and the potential need for expert testimony. As a result, this factor weighs in favor of approving the settlement.

**Stage of the proceedings and discovery.** The Parties have litigated this case for over two years. The Parties have filed numerous substantive motions—including motions for conditional certification, judgment on the pleadings, and partial summary judgment. Conditional certification was granted, notice was sent, and that process was completed. The Parties completed substantial discovery including the exchange of thousands of pages of documents and depositions of dispatcher Charles Engleman, Defendant Scott Laminack, and a deposition of Diversity at Work Group, Inc. This work permitted them to conduct detailed audits of the available data, which allowed the Parties to ultimately negotiate this settlement. *See* Doc. 68.  At this stage, the Parties are able to evaluate settlement and value the case for that purpose. This factor favors approval.

**Trial counsel's judgment.** Plaintiffs' counsel supports the settlement and believes that it is a fair, adequate, and reasonable resolution. *See* Declaration of Riley Kane (attached as Exhibit 2).

**Negotiations.** As addressed above, the Parties reached this settlement through formal mediation after detailed informal settlement discussions. This process, along with the hotly contested docket entries, demonstrates that the settlement was reached through arms-length negotiations. This factor weighs in favor of approval.

7

**Class member objections.** This factor is not relevant to an FLSA collective action settlement where all plaintiffs participating have opted-in to this lawsuit and the collective action members have authorized Named Plaintiff to settle on their behalf. *See, e.g.*, Doc. 35-1.

**The public interest.** The public has an interest in both resolving complex class and collective actions, which require significant Court resources that could be allocated to other matters. Further, because "[t]he settlement agreement itself is… public rather than confidential" this "supports the interests of other employees, the Congress, and the public, in seeing that FLSA disputes are resolved in a fair and reasonable way that is consistent with the requirements of the statute." *West v. Emeritus Corp.*, No. 3:15-CV-437, 2017 WL 2880394, 2017 U.S. Dist. LEXIS 104269, at *6 (M.D. Tenn. July 5, 2017). Further, the text of the FLSA itself explains the public's interest in ensuring that minimum wage workers' claims for unpaid wages are resolved in a just and speedy manner. *See* 29 U.S.C. 202.

7. **The requested attorneys' fee award, reimbursement of advanced litigation expenses, and administration fees are reasonable and should be approved.**

   7.1. **The attorneys' fees are reasonable.**

Class Counsel applies for an award of one-third of the settlement fund as attorneys' fees ($66,666.66). Defendants have agreed not to object to this award, which is a standard amount in this type of case. *See, e.g., Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 WL 6310376, 2019 U.S. Dist. LEXIS 204371, at *5 (S.D. Ohio Nov. 25, 2019) (stating that an award of one-third "is a normal fee amount in a wage and hour case."); *see also Dewald v. Time Warner Cable Inc.*, 2021 WL 687246, 2021 U.S. Dist. LEXIS 32459, at *14 (S.D. Ohio Feb. 16, 2021) ("When using the percentage-of-the-fund method, courts in this Circuit generally approve of awards that are 1/3 of the total settlement."). "Absent compelling reasons to the contrary, courts

8

prefer the percentage-of-the-fund method, as it best reflects the FLSA's employee-protection objective." *Waters v. Pizza to You, LLC*, No. 3:19-cv-372, 2022 WL 404614, 2022 U.S. Dist. LEXIS 26005, at *10 (S.D. Ohio Feb. 9, 2022).

The FLSA Is a fee-shifting statute and Plaintiff, if he prevailed, would be entitled to reasonable fees and expenses. *See Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 616–17 (6th Cir. 2021). There are two methods used to determine attorneys' fees in FLSA settlements. First, there is the lodestar method, which is "presumptively sufficient" to determine a reasonable fee. *Id.* This method is generally appropriate where plaintiff's counsel incur greater fees than damages due to the often-small nature of wage and hour claims. *See, e.g.*, *Cain v. Almeco USA, Inc.*, No. 1:12-CV-3296, 2014 WL 2158413, 2014 U.S. Dist. Lexis 70900 (N.D. Ga. May 23, 2014) (awarding $170,000 in attorneys' fees to litigate and prevail in an action to recover $6,000 in unpaid wages). Second, there is the percentage-of-the-fund method, which is appropriate in class and/or collective action cases because it "encourages efficiency, judicial economy, and aligns the interests of the lawyers with the class." *Estate of McConnell v. EUBA Corp.*, No. 3:18-cv-00355, 2021 WL 1966062, 2021 U.S. Dist. LEXIS 97576, at *15 (S.D. Ohio May 24, 2021) (citing *In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp. 2d 752, 762 (S.D. Ohio 2007)). Additionally, while it is not required, some courts will use a "lodestar cross-check" to aid their assessment of a fee request. *See, e.g.*, *Arp v. Hohla & Wyss Enters., LLP*, No. 3:18-cv-119, 2020 WL 6498956, 2020 U.S. Dist. LEXIS 207512, at *18–19 (S.D. Ohio Nov. 5, 2020) (performing a lodestar cross-check, but noting that it is not required).

This case, however, is simpler than most, because Collective Counsel's lodestar is greater that the fees requested, making them presumptively reasonable under *Rembert*. *See* Ex. 2 at ¶ 11.

9

Thus, the fees requested are less than or equal to what would be awardable under either method. Further, the Settlement Agreement is not conditioned on an award of attorneys' fees and Collective Counsel will continue to incur fees in helping facilitate the settlement after approval, if granted.

For these reasons, Plaintiffs ask the Court to approve the settlement, including the award of attorneys' fees.

### 7.2. Reimbursement for advanced litigation expenses should be approved.

Class Counsel also seeks reimbursement of advanced litigation. In this case, Class Counsel has incurred a total of $8,306.69 advanced in litigation costs and expenses, all of which Class Counsel advanced. *See* Ex. 2 at ¶ 15. The expenses are detailed and itemized in Attorney Kane's declaration and include service, deposition, mediation costs. *See id.* Plaintiff asks the court to approve reimbursement of these expenses.

### 7.3. Payment of administration expenses should be approved.

Additionally, Class Counsel asks that the Court to permit the deduction of reasonable settlement administration costs and expenses from the Settlement Fund. Third-party administration benefits both Parties by ensuring an orderly, neutral transmission of funds. Therefore, this expense is reasonable.

### 8. The incentive service award should be approved.

Named Plaintiff Robert Sutton requests a $10,000 incentive service award. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997).

Incentive awards account for the fact that "[b]ut for an individual worker coming forward to advocate for his fellow workers, many, if not most, wage and hour issues would go unaddressed. A worker who advocates for his or her colleagues assumes substantial risk, including the risk that a prospective employer may be hesitant to hire an employee who sued a past employer. Given that employers can find such information through a simple internet search, this risk is very real." *Brandenburg*, 2019 WL 6310376, 2019 U.S. Dist. LEXIS 204371, at *21. The same considerations apply in this case.

The proposed incentive award is typical in delivery driver under-reimbursement lawsuits. *See, e.g., Chludzinski v. NWPA Pizza, Inc.*, No. 1:20-cv-163, Doc. 43 at *2 (W.D. Pa. Sep. 29, 2020) (order granting settlement approval) (attached as Exhibit 3); *Chrismon v. Meadow Greens Pizza*, 2020 WL 3790866, 2020 U.S. Dist. LEXIS 119873, at *14 (E.D.N.C. July 7, 2020) (collecting cases approving $10,000 service awards).

9. **Conclusion**

Plaintiff asks the Court to enter an Order: (1) approving the proposed settlement; (2) approving to the service award for the Plaintiff; (3) approving to Collective Counsel's request for attorneys' fees and costs; (4) approving the deduction of reasonable settlement administration costs, (5) dismissing the Rule 23 class allegations without prejudice; (6) dismissing the state and federal law claims of the FLSA Collective with prejudice; and (7) retaining jurisdiction over this settlement to ensure that it is carried out .

                Respectfully submitted,

                */s/ Riley Kane*
                Andrew R. Biller (Ohio Bar No. 0081452)
                Andrew P. Kimble (Ohio Bar No. 0093172)

Riley E. Kane (Ohio Bar No. 0100141)
BILLER & KIMBLE, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*rkane@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiff and the FLSA Collective*

**Certificate of Service**

I hereby certify that a copy of the foregoing was filed electronically on October 14, 2022.

Notice of this filing will be sent to all Parties by operation of the Court's electronic filing system.

*/s/ Riley Kane*
Riley E. Kane
